IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-76-BO

| | |
|---|---|
| GLENDA ANN INGALLS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | ORDER |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on parties' cross motions for judgment on the pleadings. [DE 20, 25]. A hearing was held in Elizabeth City, North Carolina, on April 12, 2016. Counsel for plaintiff did not appear. For the reasons detailed below, the decision of the Commissioner is AFFIRMED.

## BACKGROUND

On October 4, 2011, plaintiff filed for supplemental security income, alleging an onset date of April 1, 2000 (later amended to October 4, 2011). [Tr. 19]. The claim was denied initially and upon reconsideration. A video hearing was held before an Administrative Law Judge (ALJ) on June 12, 2012. [Tr. 19]. The ALJ issued an unfavorable decision on November 1, 2013. [Tr. 30]. The Appeals Council denied a request for review, and the ALJ's decision became the final decision of the Commissioner, on November 12, 2014. [Tr. 9]. After receiving an extension of time to file, plaintiff sought review in this Court.

Plaintiff was 44 years old at her alleged onset date, 47 when her application was filed, and 49 at the time of decision; she is 51 now. [Tr. 28]. Plaintiff completed high school and has no past relevant work. [Tr. 28]. Plaintiff has peripheral arterial disease, anxiety disorder,

affective disorder, degenerative disc disease, disorders of the muscle/ligament/fascia, cervical strain, and right ankle contusion/sprain. [Tr. 21].

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the Court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

To find a claimant disabled, an ALJ must conclude that the claimant satisfies each of five steps. 20 C.F.R. § 404.1520(a)(4). First, a claimant must not be able to work in a substantial gainful activity. *Id.* Second, a claimant must have a severe physical or mental impairment or combination of impairments. *Id.* Third, a claimant's impairment(s) must be of sufficient duration and must either meet or equal an impairment listed by the regulations. *Id.* Fourth, a claimant must not have the residual functional capacity to meet the demands of claimant's past relevant work. *Id.* Finally, the claimant must not be able to do any other work, given the claimant's residual functional capacity, age, education, and work experience. *Id.* The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ found that plaintiff has not engaged in substantial gainful employment since October 4, 2011. [Tr. 21]. Next, the ALJ determined that plaintiff's peripheral arterial

2

disease, anxiety disorder, affective disorder, degenerative disc disease, disorders of the muscle/ligament/fascia, cervical strain, and right ankle contusion/sprain were severe impairments. *Id.* However, none of plaintiff's impairments or combination of impairments met or equaled a listing. [Tr. 23]. At step four, the ALJ found that plaintiff was capable of performing work activity that included sitting for a full workday, walking and standing for less than two hours at a time, lifting and carrying five to ten pounds. [Tr. 24]. The ALJ also found plaintiff capable of understanding, remembering, and carrying out simple instructions, sustaining attention for two hours at a time, and engaging in occasional, superficial interaction with co-workers and supervisors but not interacting with the public. *Id.* Plaintiff cannot engage in work requiring production pace work decisions; instead, work decisions must be concrete and based on standard circumstances. Plaintiff would be off task 10% of the time. *Id.* Finally, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that claimant can perform. [Tr. 28]. A vocational expert testified that these jobs would include employment as a document preparer and final assembler. [Tr. 29]. Accordingly, the ALJ found that plaintiff was not disabled since October 4, 2011. *Id.* Plaintiff now seeks review of the ALJ's determination that she is not disabled.

Plaintiff contends the ALJ erred in finding a significant number of jobs existed for plaintiff, providing insufficient discussion in parts, omitting consideration of plaintiff's other impairments, failing to account for non-exertional impairments, discrediting plaintiff's testimony, and committing several legal errors including wrongful application of the law.

I.   Jobs Finding

Plaintiff contends that her limitations are so significant—and the availability of jobs in

3

the national economy so limited—that the ALJ erred in finding a significant number of jobs existed that plaintiff could perform. This argument fails.

The ALJ based the conclusion that there are a significant number of jobs in the national economy that plaintiff can perform on the testimony of a vocational expert (VE). The ALJ relied on the VE's use of the information contained in the Dictionary of Occupational Titles and the VE's education, training, experience, and knowledge of how jobs are performed. [Tr. 29]. Based on all these factors, the VE concluded that plaintiff could work as a document preparer (98,000 jobs nationwide) or final assembler (6,600 jobs nationwide). *Id.* These suggested jobs are representative occupations, meaning the VE does not claim that this is an exhaustive list. Moreover, the fact that the VE's conclusions that a limitation for 15% of work time to be spent off-task or a sit-stand option would preclude work is not relevant to the ALJ's determination because the ALJ did not include these limitations in plaintiff's RFC. Therefore, the VE's testimony provided substantial evidence in support of the ALJ's jobs finding. *See Burnette v. Astrue*, No. 2:08-CV-9-FL, 2009 WL 863372, at *17 (E.D.N.C. Mar. 24, 2009).

II. Listing 4.12 Discussion

Plaintiff next argues the ALJ's discussion of why plaintiff was not found to meet or equal Listing 4.12 (peripheral arterial disease) was insufficient in parts 2 and 3 of the ALJ's decision. [Tr. 21–24]. In part 2, the ALJ found that plaintiff's peripheral arterial disease was a severe impairment. [Tr. 21]. In part 3, the ALJ acknowledged considering the relevant listing (4.12) but concluded that the listing's requirements "are not evidenced in the record" and that the medical evidence supporting this conclusion was reflected in the RFC. [Tr. 23]. Plaintiff contends that these conclusions were not adequately supported. The Court finds that the evidence included in the RFC discussion constitutes substantial evidence to support the ALJ's conclusion. For

4

example, the ALJ noted that in April 2012, plaintiff was not seeing a doctor for her peripheral arterial disease. [Tr. 27]. The ALJ also noted that, later in April 2012, an arterial Doppler showed no significantly debilitating findings. [Tr. 27]. Examination of the Doppler medical records reveals that plaintiff was not in the range required to meet Listing 4.12(A), and plaintiff does not point to any other medical evidence to demonstrate how she could meet or equal 4.12(B)–(D). [Tr. 353]. Accordingly, plaintiff's argument on this ground fails.

   III.   Plaintiff's Other Impairments

Plaintiff next argues that the ALJ did not properly consider her other impairments, specifically chronic fatigue syndrome, moderate artherosclerotic disease, and chronic pain syndrome. As to chronic fatigue syndrome, the Court notes that the page to which plaintiff refers to demonstrate her alleged diagnosis is instead an information sheet about the syndrome. [Tr. 372]. Nothing in the pertinent exhibit indicates that plaintiff was ever diagnosed with chronic fatigue syndrome, nor that she even complained of fatigue. [Tr. 356–82]. Therefore, the ALJ was not in error in not considering plaintiff's alleged chronic fatigue syndrome.

As to the moderate artherosclerotic disease, plaintiff cites to a diagnosis from 2009, when the relevant period in the instant matter began in 2011. [Tr. 314]. Plaintiff does not cite to any medical records discussing moderate artherosclerotic disease after plaintiff's alleged onset date, so the ALJ was not in error not to consider it.

As to the chronic pain syndrome, the Court has considered the medical records to which plaintiff cites to support this position and does not find a diagnosis of chronic pain syndrome in the records. [Tr. 384–88]. Therefore, the ALJ was not in error not to consider chronic pain syndrome. Moreover, the ALJ did conclude that plaintiff's degenerative disc disease was a severe impairment and acknowledged in the decision that some pain accompanied that condition.

5

Plaintiff correctly notes that the ALJ may not discredit complaints of pain solely because they are not supported by objective medical evidence, but, as discussed *infra*, this is not why the ALJ discredited plaintiff's statements in this case.

IV. Credibility

Plaintiff next argues that the ALJ wrongfully discredited plaintiff's testimony. The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." [Tr. 24]. The Court finds that this credibility determination is supported by substantial evidence and should thus remain undisturbed.

"Subject only to the substantial evidence requirement, it is the province of the Secretary, and not the courts, to make credibility determinations," so the appropriate inquiry is whether the credibility determination in this case was supported by substantial evidence. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994). As a preliminary matter, the Court notes that the ALJ in this case did afford some accommodations for plaintiff's complaints of pain. For example, though Dr. Plummer opined that plaintiff would be able to stand or walk a full work day in four to six months' time, the ALJ included a limitation to standing or walking for less than two hours at a time with no further time limitation. [Tr. 349, 24].

Beyond this, the ALJ did include several factors which diminished plaintiff's credibility, including plaintiff's efforts to receive additional doses of the medication Cymbalta [Tr. 25], at least one doctor's note that plaintiff was "over the top" and "extremely histrionic" throughout her visit [Tr. 341, 343], plaintiff's own contradictions as to whether she ever took someone else's medication [Tr. 58, 346], as well as other reasons discussed by the ALJ in the RFC finding discussion. For all these reasons, the Court finds that substantial evidence supports the ALJ's credibility determination in this case.

6

Case 4:15-cv-00076-BO   Document 31   Filed 05/13/16   Page 6 of 8

V.  Application of the Law

Plaintiff argues finally that the ALJ erred by committing several legal errors and wrongfully applying the law.

First, plaintiff argues that the ALJ erred by improperly relying on consultative examination (CE) reports because they did not allow for a review of a subsequent change in plaintiff's conditions. Here, the Court notes that the ALJ only gave these CE reports some weight, which diminishes the impact they have on the overall RFC assessment. [Tr. 25–28]. The RFC assessment makes clear that the ALJ also relied on objective medical evidence and plaintiff's credibility determination. Moreover, the page to which plaintiff cites to support her argument of a change in conditions is a report from a doctor visit in December 2011. The Court notes that this is *before* at least one of the CEs to which plaintiff objects as not taking into account a "subsequent" change in conditions. The Court also notes that the content of the page to which plaintiff cites does not demonstrate any medical evidence supporting a change in conditions. [Tr. 88]. Plaintiff next argues that the ALJ was given additional evidence that she did not consider; however, plaintiff does not cite to any of this additional evidence.

Next, plaintiff argues once again that the ALJ did not properly consider her complaints of pain. This argument has been discussed *supra* and will not be reiterated here.

Finally, plaintiff argues that the ALJ did not consider plaintiff's additional impairments of fibromyalgia, irritable bowel syndrome, and reflux, though plaintiff only presents argument to support the fibromyalgia claim. The Court notes that SSR 12-2p, which discusses how to evaluate fibromyalgia, requires evidence that other disorders that could cause the symptoms be excluded. SSR 12-2p. The ALJ noted that, here, plaintiff provided no evidence that other disorders that could cause her symptoms—such as a thyroid disorder or rheumatoid arthritis—

7

were excluded. [Tr. 22–23]. Therefore, fibromyalgia was not considered a medically determinable impairment in the instant case. The Court finds that this determination is supported by substantial evidence and is not in error.

For all the reasons discussed above, the Court finds that the ALJ's decision reflects a thorough consideration of the medical record and the testimony in this case and is supported by substantial evidence. The decision of the Commissioner is therefore affirmed.

## CONCLUSION

For the aforementioned reasons, plaintiff's motion for judgment on the pleadings [DE 20] is DENIED, and defendant's motion for judgment on the pleadings [DE 25] is GRANTED. The decision of the Commissioner is AFFIRMED.

SO ORDERED, this _12_ day of May, 2016.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE